## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| **HEATHER DALY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | **Civil Action File No.** |
| | **)** | **2:21-CV-165-SJC** |
| | ) | |
| **HALEY EFFERTH;** | ) | JURY TRIAL DEMANDED |
| **EMILY ZILAVY; and** | ) | |
| **OLIVER GLENN, III,** | ) | |
| | ) | |
| Defendants. | **)** | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT[1]

**COMES NOW** Plaintiff, Heather Daly, and for her Second Amended

Complaint for damages against Defendants, HALEY EFFERTH ("Efferth"),

EMILY ZILAVY, and OLIVER GLENN III ("Glenn"), Plaintiff states as follows:

1.

This is a civil rights lawsuit, pursuant to 42 U.S.C. § 1983, with a pendent

state law claim against Glenn, in which Plaintiff seeks damages against Defendants

Efferth, Zilavy, Teamer, Dawe, Campolong, Capes, Arefin, and Epps to redress the

deprivation, under color of state law, of rights secured to Plaintiff under the First,

---

[1] On July 25, 2022, the Court granted Defendants' Motions to Dismiss without prejudice and granted Plaintiff leave to file a Second Amended Complaint. (Doc. 45, p 41). Plaintiff restates Counts I, II, and IV and the related allegations in Paras. 1-51 as to the dismissed Defendants (Teamer, Dawe, Campolong, Capes, Arefin, and Epps) for purposes of preserving all issues for appeal only. In the Second Amended Complaint, Plaintiff is not seeking any relief against the dismissed Defendants and no answer by the dismissed Defendants is required.

Fourth, and Fourteenth Amendments of the United States Constitution. All Defendants are named and sued in their individual capacities.   The action arises out of Defendants' (1) illegal removal of a child from Plaintiff's physical custody; (2) continued withholding of the child without due process of law; (3) arbitrary investigation of the matter by the Defendants; (4) coercion by the Defendants; and (5) interference with Plaintiff's liberty interest in her child.

2.

Defendants Efferth, Zilavy, Teamer, Dawe, and Campolong (collectively, the "GA DFCS Defendants") all worked for the Forsyth County Division of Family and Children Services ("DFCS") at all times relevant to the Complaint.   Defendants Capes, Arefin, and Epps were all paid by Forsyth County in the underlying state court proceedings.   Defendants Capes, Arefin, and Epps are not named or sued in their capacities as legal advocates.   Defendants Capes, Arefin, and Epps are named and sued in their individual capacities as functionaries for DFCS and who, in the exercise of administrative or investigative functions, caused the constitutional deprivations alleged herein.

3.

In summary, Glenn lured LD (a disabled minor) out of state and had an illegal sexual relationship with her.   Plaintiff followed the appropriate legal channels to locate LD out of state and bring her back home to Georgia.   After LD returned to

Georgia, however, each one of the remaining Defendants played a part in blaming Plaintiff for Glenn's illicit actions; falsely accusing Plaintiff of abusing and neglecting LD; illegally removing and continuing to withhold LD from Plaintiff's custody; preventing Plaintiff from properly parenting, supervising, and protecting LD; and, thereby, allowing Glenn to lure LD away and take her out of state for a second time while LD was in the physical custody of DFCS and without proper care and supervision.

4.

Even after warrants were issued for LD's detention and Glenn's arrest, Defendants continued to falsely accuse Plaintiff of abusing and neglecting LD. Defendants' concerted efforts continued until August 2020 when the Forsyth County Juvenile Court exonerated Plaintiff. Tragically, by then, it was too late to protect LD. After Glenn lured LD out of state for the second time and LD absconded from DFCS' physical custody, Glenn raped and impregnated her.

5.

Plaintiff, Heather Daly, was the permanent legal custodian of her niece ("LD") at all times relevant to the Complaint. Plaintiff resides in Forsyth County in this Judicial District.

6.

Defendant / Efferth was a Social Services Supervisor and Administrator for GA DFCS at all times relevant to the Complaint. Defendant / Efferth can be served at 2 Peachtree Street NW, 19th Floor, Atlanta, Georgia, 30303.

7.

Defendant / Zilavy was a Case Manager for GA DFCS at all times relevant to the Complaint. Defendant / Zilavy can be served at 2 Peachtree Street NW, 19th Floor, Atlanta, Georgia, 30303.

8.

Defendant / Teamer was a Case Worker for GA DFCS at all times relevant to the Complaint. Defendant / Teamer can be served at 2 Peachtree Street NW, 19th Floor, Atlanta, Georgia, 30303.

9.

Defendant / Dawe was a GA DFCS supervisor at all times relevant to the Complaint. Defendant / Dawe can be served at 2 Peachtree Street NW, 19th Floor, Atlanta, Georgia, 30303.

10.

Defendant / Campolong was the County Director and Regional Director of GA DFCS at all times relevant to the Complaint. Defendant / Campolong can be served at 2 Peachtree Street NW, 19th Floor, Atlanta, Georgia, 30303

11.

Defendant / Capes was appointed as the first guardian ad litem in the underlying matters.   Defendant / Capes can be served at 343 Dahlonega St., Cumming, GA  30040.

12.

Defendant / Arefin was appointed as the second guardian ad litem in the underlying matters.   Defendant / Arefin can be served at 5000 Clayton Road, Maryville, TN, 37804.

13.

Defendant / Epps was appointed as counsel for LD. Defendant / Epps can be served at 970 Peachtree Industrial Blvd., Suite 300, Suwanee, GA 30024.

14.

Defendant / Glenn interfered with Plaintiff's custody of LD in that Glenn enticed LD away from Plaintiff twice and illegally transported LD across state lines before raping and impregnating LD while LD was in Plaintiff's legal custody. Defendant / Glenn can be served where he may be found.

15.

Jurisdiction is conferred upon this Court by 28 U.S.C. §1343, which provides for original jurisdiction over all actions brought pursuant to 42 U.S.C. §1983, by 28 U.S.C. §1331, which provides jurisdiction over all cases brought pursuant to the

Constitution and laws of the United States.  The Court has pendent jurisdiction over certain defendants and over plaintiff's state law claims pursuant to 28 U.S.C. §1367.

16.

Venue is proper, in this district, pursuant to 28 U.S.C. §1391(b).

17.

On May 30, 2019, LD (a disabled teenager) was lured away from Plaintiff's home in Georgia by Glenn (an adult male).  Plaintiff immediately reported LD as missing to local law enforcement in Forsyth County, Georgia.  Approximately one week later, Plaintiff located LD in Fort Worth, Texas with Glenn.  Plaintiff contacted local law enforcement in Fort Worth, Texas.  As a result, LD was taken into custody and detained in Texas pending the exhaustion of the legal process, initiated by Plaintiff, necessary to return LD to Georgia pursuant to the Interstate Compact for Juveniles.

18.

On July 30, 2019, LD was returned to Georgia where she was detained overnight pending a hearing on her alleged juvenile delinquency for Runaway to Texas.  At this time, there was a pending Child In Need of Services ("CHINS" or "delinquency") Petition in the Forsyth County Juvenile Court.  Prior to LD absconding to be with Glenn, with assistance and coaching from Glenn, LD had accused Plaintiff of abuse and neglect.  On information and belief, Glenn told LD if

she falsely accused Plaintiff of abuse and neglect, Plaintiff would be investigated, and LD would likely be placed into temporary / protective custody and outside Plaintiff's custody and supervision, which would make it easier for LD (a disabled minor)  to be with Glenn (an adult male).   Following Glenn's suggestion, LD fabricated a story of abuse and neglect in January 2019.  Those allegations were investigated by DFCS, including Defendant / Efferth specifically. On June 28, 2019, DFCS and Defendant / Efferth determined LD's allegations of abuse and neglect were unfounded and unsubstantiated.  By June 28, 2019, Defendant / Efferth knew that LD had falsely accused Plaintiff of abuse and neglect to further Glenn's plan to have an illicit relationship with LD.

19.

On or before July 31, 2019, Defendant / Efferth was directly involved in the second investigation of abuse and neglect alleged by LD against Plaintiff.   On information and belief, Defendant / Efferth discussed the prior false allegations with Defendants / Epps and Capes.  On or before July 31, 2019, Epps and Capes were aware of the prior false allegations of abuse and neglect against Plaintiff.  The false allegations of abuse and neglect made by LD as a part of the second DFCS investigation were substantially the same as the false allegations of abuse and neglect DFCS and Defendant / Efferth previously determined to be unfounded and unsubstantiated.

7

20.

On or before July 31, 2019, Defendants were aware or should have been aware: of LD's false allegations; of DFCS' prior determination that said allegations were unfounded and unsubstantiated; of Glenn's involvement in advising LD to deflect from him by raising false allegations against Plaintiff; that Glenn (an adult male with a criminal history) had lured LD away from Plaintiff; that LD (a disabled teenage girl) had been staying with Glenn in a hotel in the State of Texas prior to being returned to the State of Georgia; and that Plaintiff had found LD in Texas and initiated the legal proceedings necessary to return LD to the State of Georgia.

21.

Rather than investigating Glenn for his role in luring LD to Texas and advising LD to deflect from him and make false allegations of abuse and neglect against Plaintiff, the GA DFCS Defendants, Capes, and Epps conspired to present knowingly false information and to knowingly omit known material exculpatory information which resulted in Plaintiff losing physical custody of LD on July 31, 2019.

22.

Efferth failed to communicate to the Court on or before July 31, 2019, that LD had falsely accused Plaintiff of abuse and neglect previously. Knowing this, Capes and Epps failed to *inter alia* investigate Glenn for his role in luring LD out of

8

state and falsely communicated to the Court that emergency circumstances existed which warranted an immediate and *ex parte* hearing on the removal of LD from Plaintiff's custody.

23.

Capes failed to communicate to the Court when she was appointed as guardian ad litem that she had a conflict of interest.  Capes had previously consulted with Plaintiff in March of 2019 about the false allegations of abuse and neglect LD made against Plaintiff in January 2019.  Instead of disclosing her prior consultation with Plaintiff or the blatant conflict of interest Capes had by now serving as GAL, Capes herself made a report to the DFCS statewide Central Intake Communications Center for abuse and neglect against Plaintiff based on the same false accusations of abuse and neglect that DFCS and Efferth previously determined to be unfounded.

24.

Defendants all knew a child's status as a runaway, under Georgia law, cannot be used as a basis for a finding of abuse or neglect by a parent or legal guardian. Knowing this, Defendants Epps, Capes, and Efferth falsely stated to the Court that other allegations of abuse and neglect were raised against Plaintiff but failed to inform the Court that those same allegations had been determined to be unfounded and unsubstantiated by DFCS and Efferth.

25.

Capes knew that a child could not be placed in a group home in a delinquency/CHINS matter "pending investigation."  Capes knew LD's allegations of abuse and neglect were the same as the allegations DFCS and Efferth determined to be unfounded and unsubstantiated. Still, Capes misstated facts and omitted exculpatory evidence when she recommended on July 31, 2019, that LD be placed into a group home.

26.

LD communicated to Plaintiff on the morning of July 31, 2019, that LD's "lawyer" told LD to keep their "plan" confidential and to only discuss it with the "team."

27.

On or before July 30, 2019, Efferth, Capes, and Epps all falsely asserted that LD was in imminent risk of danger such that it would be contrary to LD's welfare to be returned to Plaintiff's physical custody.  The imminent risk Defendants asserted was LD's threat of running away again.  This shows Defendants knew LD was a flight risk, and still Efferth, Capes, and Epps took actions to create or increase the risk that LD would abscond to Glenn yet again by failing to investigate Glenn, knowingly relying upon statements made by LD that had been previously determined to be unfounded and unsubstantiated, misstating facts to the Court, and

omitting exculpatory evidence showing that LD had not been abused or neglected by Plaintiff.

28.

The GA DFCS Defendants, Capes, Arefin, and Epps knew that LD has been lured away from her home by Glenn, who was engaged in an unlawful sexual relationship with her.  The GA DFCS Defendants, Capes, Arefin, and Epps failed to disclose that LD had been lured away from her home by Glenn, who was engaged in an unlawful sexual relationship with her.

29.

The GA DFCS Defendants, Capes, Arefin, and Epps all knew that Plaintiff had located LD with Glenn in Texas but failed to disclose that to the Court and instead misrepresented to the Court that Plaintiff was negligent in allowing LD to abscond and that it was somehow Plaintiff's fault that LD left Plaintiff's home.

30.

Efferth, Teamer, Capes, Arefin, and Epps knew that LD was under the influence of Glenn's manipulation, wanted to return to Glenn, and, at Glenn's direction, had fabricated a story to explain why she absconded from Plaintiff. Efferth, Capes, and Epps failed to disclose that LD, under the influence of Glenn's manipulation, wanted to return to Glenn and, at Glenn's direction, had fabricated a story to explain why she absconded from Plaintiff.

31.

The GA DFCS Defendants, Capes, Arefin, and Epps knew that LD was significantly disabled such that she was susceptible to manipulation by Glenn and that her recitation of events was otherwise not generally credible. Efferth, Capes, and Epps failed to disclose that LD was significantly disabled such that she was susceptible to manipulation by Glenn and that her recitation of events was otherwise not generally credible.

32.

The GA DFCS Defendants, Capes, Arefin, and Epps knew that LD had told demonstrable falsehoods about Plaintiff to follow Glenn's instructions to return to Glenn, who had lured her away, absconded with her, raped, and impregnated her.

33.

Efferth, Capes, and Epps repeated the known fabrications from LD about Plaintiff without the critical information that LD had tried the same tactic once before and been caught doing so and that LD's statements were plainly false and obviously designed to distract attention from Glenn, focus attention on Plaintiff, prevent Plaintiff from supervising LD and therefore allow LD to flee the state with Glenn again.

34.

Efferth, Capes, Arefin, and Epps knew that Plaintiff was horrified to find LD with Glenn in Texas and that Plaintiff immediately took all reasonable measures to return LD home in time to start school on time and to prevent Glenn from contacting LD.  Nonetheless, Epps intentionally undermined Plaintiff's parenting of and ability to protect LD by secretly providing a mobile telephone to LD which LD used to continue communicating with Glenn while she was at the group home.

35.

Efferth, Capes, Arefin, and Epps failed to disclose that Plaintiff was horrified to find LD with Glenn in Texas and that Plaintiff immediately took all reasonable measures to return LD home in time to start school on time and to prevent Glenn from contacting LD or that Epps intentionally undermined Plaintiff's parenting of and ability to protect LD by secretly providing a mobile telephone to LD which LD used to continue communicating with Glenn while she was at the group home.

36.

After procuring the removal of LD from Plaintiff's custody, on July 31, 2019, Efferth and Capes performed a physical examination of Plaintiff's home. During that part of the investigation, Efferth and Capes found a letter written by LD under LD's mattress. The letter corroborated what Efferth had already determined; that LD's allegations of abuse and neglect were false; that LD loved Plaintiff and her husband;

13

and that LD thanked God every day for them. Efferth communicated this information to Epps. Still, the GA DFCS Defendants, Capes, Arefin, and Epps persisted in not investigating Glenn; in falsely accusing Plaintiff of abuse and neglect; in making false statements to the Court; and in failing to present exculpatory evidence, which demonstrated that Plaintiff had not abused or neglected LD.

37.

The GA DFCS Defendants, Capes, and Arefin intentionally failed to make any efforts to reunite LD with Plaintiff—much less the reasonable efforts the GA DFCS Defendants were required to make under the law prior to removal. For example, the GA DFCS Defendants failed to properly investigate, seek alternative placement, propose returning LD under a safety plan, offer services, provide security, or have a forensic interview done with LD to determine the veracity of the accusations.

38.

Efferth, Zilavy, Capes, Arefin, and Epps refused to even listen to Plaintiff's warnings that Glenn was behind all the fabrications in an attempt to deflect attention away from him, manipulating all of them and LD, and would attempt to lure LD away again from the group home.

14

39.

Efferth, Capes, Arefin, and Epps also intentionally prevented Plaintiff from being able to present facts about her home and LD in repeated hearings through a pattern of misconduct.  Defendants' course of conduct continued through August 2, 2020, when the Juvenile Court in Forsyth County exonerated Plaintiff of all allegations of abuse and neglect.  By that time, LD had been lured away by Glenn again.  This time, LD absconded from the foster home where Capes and Epps requested that she be placed and where the GA DFCS Defendants placed her.  LD went back to Glenn, where he continued his sexual relationship with LD, a disabled minor.  LD absconded while under the supervision of Defendants and in DFCS' physical custody.  Warrants for LD's detention and Glenn's arrest were issued.  Still, Defendants continued their false accusations of abuse and neglect against Plaintiff through Plaintiff's exoneration on August 2, 2020.

40.

In this case, Plaintiff is seeking redress for Defendants' actions.  Plaintiff is not challenging any rulings made by the Juvenile Court.

41.

The GA DFCS Defendants, Arefin, and Epps baselessly threatened Plaintiff and her witness, Chris Wujcik, with arrest for any attempts to explain what was really going on and that Glenn was attempting to lure LD away again.

42.

The GA DFCS Defendants, Capes, and Epps unlawfully violated Plaintiff's rights of notice and the opportunity to be heard repeatedly by presenting knowingly false information and omitting critical information in *ex parte* proceedings from which they improperly excluded Plaintiff and her attorney; by failing to inform Plaintiff in advance that removal of LD would be requested during a proceeding from which she would be improperly excluded (GA DFCS Defendants); by threatening Plaintiff with arrest if she did not voluntarily give up her custody rights (Efferth, Epps, and Capes); by falsely communicating to LD's school and law enforcement that Plaintiff's parental rights had been terminated and thereby preventing Plaintiff from meaningful participation in LD's education and in locating LD after she absconded from the group home and to Glenn for a second time (Capes);  in the case of the GA DFCS Defendants, by systematically violating DFCS policies and procedures that required consultation with, and investigation into, Plaintiff before LD was removed from her physical custody; by performing an arbitrary investigation  after LD was removed and after LD was lured out of state by Glenn for the second time (Efferth, Zilary, Teamer, Dawe, and Campolong); by procuring LD's removal and continued withholding from Plaintiff's custody based on circumstances Defendants knew to be false (Efferth, Capes, and Epps); and by knowingly misstating to the juvenile court that an emergency situation existed

16

warranting the immediate removal of LD from Plaintiff's custody when Defendants Epps, Capes, and Efferth knew LD's status as a runaway could not constitute exigent circumstances, abuse, or neglect under Georgia law.

43.

As result of the GA DFCS Defendants, Capes, and Epps' misrepresentations to the Court, LD was removed from the relative safety of Plaintiff's home and placed into the relative danger of a group home, where she had less supervision and was secretly provided a mobile phone by Epps and therefore was more readily able to be lured away by Glenn.

44.

Plaintiff warned Efferth, Zilavy, Capes, and Epps that LD was a flight risk and that she should have an ankle monitor or some other interventions in place in case Glenn tried to lure her out of state for a second time.

45.

Efferth, Zilavy, Capes, and Epps never relayed these warnings to LD's group home or to her high school or the Forsyth County Sheriff's Office or any other law enforcement agency.

46.

When Plaintiff tried to communicate her fears about Glenn luring LD away to the school and local law enforcement, Efferth, Capes, and Epps falsely told school

officials, group home personnel, and local law enforcement that Plaintiff had lost all rights related to LD.

47.

These statements were knowingly false because the Defendants knew that Plaintiff retained legal custody of LD and all related rights after July 31, 2019, including (without limitation) the right to make decisions and communicate with educators and law enforcement about LD's education, whereabouts, health, and safety.

48.

While in DFCS' physical custody, on September 11, 2019, LD left her high school and returned to Glenn.  She never returned home.

49.

Instead of investigating Glenn or assisting in the return of LD to her home with Plaintiff, the GA DFCS Defendants, Capes, Arefin, and Epps continued to direct their efforts towards falsely accusing Plaintiff of the abuse and neglect of LD without any basis in fact.

50.

While in Texas with Glenn for a second time, LD was statutorily raped and impregnated by Glenn in October of 2019. By March 2020, the GA DFCS Defendants, Arefin, and Epps knew this.  Nevertheless, they failed to disclose that

information until August of 2020 (two months after LD had given birth).  Those Defendants withheld this material information from the juvenile court as a part of their concerted and continued attempts to prevent Plaintiff from properly parenting LD, a disabled teenager.

51.

Plaintiff never abused or neglected LD. All Defendants knew that. Nevertheless, based on Defendants' misrepresentations, including without limitation that Plaintiff had security cameras pointed at LD's bedroom, Plaintiff was added to the Georgia Child Abuse Registry.

**<u>COUNT I</u>**
Section 1983 – Substantive Due Process
The GA DFCS Defendants, Capes, Arefin and Epps

52.

Instead of investigating Glenn, the GA DFCS Defendants, Capes, Arefin, and Epps falsely accused Plaintiff of abuse and neglect.

53.

The GA DFCS Defendants, Capes, and Arefin failed and refused to investigate Glenn even though Defendants knew or should have known that he lured LD out of state in May of 2019.

54.

Efferth, Capes, and Arefin failed to disclose evidence in the form of a handwritten note from LD and LD's social media conversations that supported Plaintiff's contentions.   Arefin failed to disclose that LD's long-term therapists disagreed with DFCS's approach and recommended that LD be returned home from the beginning.

55.

The GA DFCS Defendants, Capes and Arefin failed and refused to investigate Glenn even after he lured LD out of state for the second time and statutorily raped and impregnated her.

56.

The GA DFCS Defendants, Capes, Arefin, and Epps misrepresented all material facts about LD being lured away.  Efferth, Capes, and Arefin also failed to present evidence showing that no reasonable efforts had been taken to avoid removal of LD from Plaintiff's custody.  Efferth, Capes, and Arefin all failed to disclose that the GA DFCS Defendants took no efforts to avoid removing LD from Plaintiff's custody.

57.

The GA DFCS Defendants, Capes, Arefin, and Epps failed to provide exculpatory evidence to the court when they knew Glenn had endangered, statutorily raped, and impregnated LD, all while LD was a disabled minor.

58.

The GA DFCS Defendants, Capes, and Epps failed to adequately monitor and supervise LD, knowing LD had previously been lured out of state by Glenn. Epps even went so far as to provide LD with a mobile telephone with which Glenn could contact LD in the group home.  Even after Glenn lured LD out of state for a second time, Defendants continued to knowingly and falsely accuse Plaintiff of abusing and neglecting LD.

59.

As a result, LD was illegally removed from Plaintiff's custody and never returned to Plaintiff. In addition, Plaintiff was placed on the Georgia Child Abuse Registry (CAR).

60.

GA DFCS Defendants, Capes, and Arefin knew that several collaterals stated that Lauren was known to fabricate stories that were not true, but they failed to disclose this to the court.  GA DFCS Defendants, Capes, and Arefin knew that

Lauren's long-term therapists repeatedly stated that they did NOT suspect any kind of abuse or neglect and recommended that LD be returned home to Plaintiff.

61.

The GA DFCS Defendants, Capes, and Epps and Arefin's conduct shocks the conscience and represents the knowing and intentional interference with Plaintiff's custodial, parenting, and associational rights.

62.

Defendants' false statements of fact, omission of exculpatory evidence, and arbitrary investigation deprived Plaintiff of her familial relationship and liberty interest in her parenting and custody of LD. Defendants falsely accused Plaintiff of abuse and neglect based on acts DFCS previously determined to be unfounded and unsubstantiated.  Defendants omitted that material fact and exculpatory evidence in their representations and filings with the juvenile court. Defendants (Epps, Capes, and Efferth) procured LD's removal from Plaintiff's custody and continued detention with misstatements about exigent circumstances Defendants knew did not exist and under existing law could not form the basis for exigent circumstances. Defendants then lied to law enforcement, LD's school, and LD's group home about Plaintiff's legal status and thereby prevented Plaintiff from meaningful participation in LD's education, safety, and security. While under Defendants' supervision and in the physical custody of DFCS, LD absconded again to the same adult male (Glenn)

Defendants knew LD had absconded with previously and with whom Defendants knew LD (a disabled minor) was having a sexual relationship. Epps actually gave LD a cell phone, allowing LD to orchestrate her runaway with Glenn. Even after LD absconded for the second time and warrants for her detention and Glenn's arrest were issued, Defendant persisted in their false accusations of abuse and neglect against Plaintiff.

## **COUNT II**
Section 1983 – Procedural Due Process
The GA DFCS Defendants, Capes, Arefin, and Epps

63.

The GA DFCS Defendants, Capes, Arefin, and Epps deprived Plaintiff of her constitutionally protected liberty interest in parenting her child, LD.

64.

The GA DFCS Defendants, Capes, Arefin, and Epps acted under color of state law and through official state action.  Capes, Arefin, and Epps were appointed by the court and paid by the county and obviously failed to properly investigate or disclose what they discovered, thereby permitting DFCS to obtain funding for a child in custody rather than assisting in reunifying a family or protecting a vulnerable disabled child.

65.

The GA DFCS Defendants, Capes, Arefin, and Epps intentionally eliminated all manner of constitutionally required process by failing to notify Plaintiff of proceedings, by conspiring to prevent Plaintiff from presenting true facts, by threatening Plaintiff with arrest for presenting true facts, by presenting knowingly false information, by intentionally withholding known exculpatory information, and by systematically violating GA DFCS' policies and procedures for required investigative steps prior to seeking removal or after obtaining physical custody of LD.

66.

Epps improperly, and in violation of Plaintiff's right to be present and hear accusations against her and to be present as her own counsel, argued, in front of Plaintiff, who is an attorney, that Efferth and her counsel, Rochelle Doyle, be permitted an ex parte communication with the court to explain their case against Plaintiff and for removal of LD from her custody.  Epps was also present during the ex parte meeting and refused Plaintiff's request to attend.  The same day, Epps requested that Plaintiff's long-time domestic partner, Dunstan DeSouza, who had been co-parenting Lauren for six years, be excluded from the courtroom in a pattern of secrecy and intimidation.

67.

Plaintiff received no notice that Lauren could be removed from her custody prior to Lauren's removal on July 31, 2019. There was no DFCS investigation pending. No pleadings had been filed. No case had been opened. No reasonable efforts were provided.  In fact, a case with the same allegations had been closed a month prior. LD was removed as the result of a hearing in a pending CHINS/delinquency case based solely on LD's status as a runaway, which under Georgia law cannot be a basis for dependency, abuse, or neglect.  Moreover, when Defendants (Epps, Capes, and Efferth) proceeded ex parte on July 31, 2019, Plaintiff was denied any participation in the constitutionally insufficient removal hearing.

## <u>COUNT III</u>
Felony/Tortious Interstate Interference with Custody and Seduction of Daughter
OCGA 51-1-16
Defendant / Glenn

68.

Glenn manipulated LD to claim obvious falsehoods about Plaintiff so that LD could abscond with him, lured LD away from Plaintiff's lawful custody (twice), took LD across state lines, raped, and impregnated LD all while LD was an unmarried minor who had been living with Plaintiff and in Plaintiff's legal custody.

69.

As a result, LD was illegally removed from Plaintiff's physical custody and never returned to Plaintiff's and Plaintiff was falsely accused of abuse and neglect.

25

70.

Plaintiff demands trial by jury on all issues and claims so triable.

## **COUNT IV**
Section 1985: Conspiracy to Violate Constitutional Rights by Private Parties
(In the Alternative to Counts I and II)
Defendants / Epps, Capes, and Arefin

71.

In the alternative to Counts I and II, if the Court finds that Defendants, Epps, Capes, and Arefin, are not state actors, then Plaintiff seeks redress for Defendants' violation of Plaintiff's clearly established rights under 42 U.S.C. Sec. 1985.

## **COUNT V**
Section 1983 – Substantive Due Process
Defendants / Efferth & Zilavy

72.

LD was in the custody and under the control and supervision of Efferth and Zilavy when LD absconded with Glenn and became pregnant.

73.

On July 31, 2019, the Forsyth County Juvenile Court ordered LD into the custody of the Forsyth County Division of Family and Children Services.

74.

Forsyth County Division of Family and Children Services delegated the day-to-day custody and supervision of LD to Efferth and Zilavy.

26

75.

Zilavy and her supervisor, Efferth, took custody of LD and placed her into a group home. While at the group home and under the custody and supervision of Zilavy and Efferth, LD communicated with Glenn using the cell phone Epps provided her. While under Zilavy and Efferth's custody and supervision, LD and Glenn planned for LD to abscond from the group home where Zilavy and Efferth placed her.

76.

Efferth and Zilavy's custody and control over LD included, without limitation, communications with LD's school over her attendance and education; decision-making over how LD went to and returned to the group home from school; decision-making over which doctor appointments LD attended; decision-making over the security and supervision of LD at school and the group home; attendance at and reporting to the Juvenile Court on LD's status in the group home; reporting and completing the appropriate missing persons paperwork for LD after she ran away; and releasing photographs of LD to law enforcement after she ran away and became pregnant.

77.

As Zilavy's supervisor, Efferth communicated to Zilavy *inter alia* that LD's initial allegations of abuse and neglect were unfounded and unsubstantiated; and that

LD's second complaints about abuse and neglect were substantially the same as the initial false allegations.

78.

In addition, Zilavy was aware that neither Efferth nor anyone else had communicated to the Juvenile Court that LD's initial allegations were false, unfounded, and unsubstantiated.

79.

Zilavy was aware of the letter Efferth found. (Para. 36 *supra*). Like Efferth, Zilavy failed to bring the letter to the Juvenile Court's attention.

80.

Zilavy and Efferth's actions permanently deprived Plaintiff of her constitutionally protected rights. By the time Plaintiff was exonerated in the Forsyth County Juvenile Court, LD (a minor) had run away to Glenn and become pregnant with his child. LD never returned home, and Plaintiff never regained custody of her from GA DFCS, Zilavy, or Efferth.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

(a)     Enter Judgment in Plaintiff's favor.

(b)     Find that Defendants' conduct was malicious, intentional, or recklessly or callously indifferent to Plaintiff's health, wellbeing, and protected rights.

(c)     Award Plaintiff compensatory and punitive damages, as allowed by law.

(d)     Grant Plaintiff recovery of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Respectfully submitted this 15th day of August, 2022.


                                        */s/ Zack Greenamyre*
                                        Zack Greenamyre
                                        Georgia State Bar No.
                                        Mitchell & Shapiro, LLP
                                        3490 Piedmont Road NE, Suite 650
                                        Atlanta, Georgia 30305
                                        (404) 812-4747 Phone
                                        zack@mitchellshapiro.com
                                        *Local Counsel for Plaintiff*

                                        */s/ Aaron W. Rapier*
                                        Aaron W. Rapier
                                        Illinois State Bar No. 6270472
                                        Admitted *pro hac vice*
                                        Rapier Law Firm
                                        1770 Park St., Suite 200
                                        Naperville, IL 60563
                                        (815) 782-5478 Phone
                                        arapier@rapierlawfirm.com
                                        *Lead Counsel for Plaintiff*


                                        ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **HEATHER DALY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | **Civil Action File No.** |
| | **)** | **2:21-CV-165-SJC** |
| | ) | |
| **HALEY EFFERTH;** | ) | |
| **EMILY ZILAVY;** | ) | |
| **OLIVER GLENN, III,** | ) | JURY TRIAL DEMANDED |
| | **)** | |
| Defendants. | **)** | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing Second Amended Complaint in the above-styled civil action with the Clerk of Court by using the Court's CM/ECF system, which will automatically send notice of same to all attorneys of record registered to use the Court's CM/ECF system.

I further certify that the above and foregoing document meets the requirements set forth in L.R. 5.1C (N.D.Ga.) and has been prepared using Times New Roman 14-point font.

This 15th day of August 2022.

/s/ Zack Greenamyre